IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

IN THE MATTER OF THE SEARCH OF
THE CELLULAR TELEPHONE ASSIGNED
CALL NUMBER 513-418-7956

Case No. **1:19MJ-401**

**Filed Under Seal**

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Tyler D. Field, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **513-418-7956** the ("**SUBJECT TELEPHONE**"), whose service provider AT&T, a wireless provider headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3123(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent (SA) of the Drug Enforcement Administration (DEA) and have been so employed since March 2016. I also serve as a U.S. Army Military Police Major in

the Indiana Army National Guard and have done so for over seventeen years. Prior to being employed with the DEA, I was employed as a police officer for the Town of Bridgewater, Massachusetts for over three years. I graduated from the U.S. Army Military Police School, Plymouth Police Academy, and DEA Basic Agent Academy. During those courses I received training in the investigation of offenses involving controlled substances. As a Special Agent of the DEA, my duties and responsibilities include conducting criminal investigations for violations of federal law, particularly those found in Title 21 and Title 18 of the United States Code. As a DEA agent, I have participated in approximately fifteen criminal investigations seeking evidence of violations of the Federal Controlled Substances Act (Title 21, of the United States Code).

4. I am currently assigned to the Cincinnati Resident Office of the DEA. I received specialized training from the DEA, including the 18-week Basic Agent Training course. That training focused on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 United States Code, Sections 841 and 846 have been committed, are being

committed, and will be committed by the unknown person using the **SUBJECT TELEPHONE**, the unknown person using telephone number 52-3112564601 (UP4601), Oscar TORBERT, and other as-yet known and unknown individuals. I believe there is probable cause that the **SUBJECT TELEPHONE is** being used in furtherance of the aforementioned crimes and that there is also probable cause to believe that the location of the **SUBJECT TELEPHONE** will constitute evidence of those criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

7. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8. The United States, including the Drug Enforcement Administration, is conducting a criminal investigation of Oscar TORBERT and other known and as-yet unknown individuals regarding possible violations of 21 United States Code Sections 841 (a)(l) and 846.

9. On March 6, 2019, the Honorable Michael R. Barrett, United States District Court Judge in the Southern District of Ohio, signed a court order authorizing the initial interception of wire and electronic communications to and from telephone numbers 513-629-0062, 513-331-1962, and 513-968-0077, all used by Oscar TORBERT. On March 7, 2019, agents began the interception of wire and electronic communications. Based on call record analysis, physical surveillance, and intercepted communications, I determined that TORBERT was the user of the three previously mentioned telephones.

10. On March 13, 2019, at approximately 3:36 p.m., the Ohio State Highway Patrol and Cincinnati Police Department conducted a motor vehicle stop on a vehicle in which Oscar TORBERT was a passenger. Officers identified TORBERT and learned that TORBERT had an active felony warrant for drug possession. TORBERT was arrested and officers located a small bag containing approximately .476 grams of fentanyl mixture on the seat where TORBERT had been sitting. TORBERT admitted to possessing the fentanyl mixture. TORBERT also possessed a key chain containing multiple keys.

11. The Honorable Ted N. Berry, Municipal Court Judge in Hamilton County, Ohio, signed a search warrant authorizing the search of 2504 Kipling Avenue, Apartment 2, to include the common basement. At approximately 8:50 p.m., the DEA Cincinnati Resident Office and the Cincinnati Police Department executed the search warrant. Officers/agents made entry into 2504 Kipling Avenue, Apartment 2, using a key on the key chain that was previously seized from Oscar TORBERT. Inside the apartment, officers/agents located a small bag containing approximately a gram of cocaine, an empty, kilogram-sized vacuum seal bag with heroin/fentanyl residue, suspected drug ledgers, and drug preparation and packaging materials to include gloves, a scale, a blender, a vacuum sealer, and vacuum seal bags. Agents are aware that drug traffickers often obtain controlled substances in kilogram-sized quantities and then use blenders and cutting materials to add volume to the controlled substances for future distribution. I am also aware that drug traffickers often use scales to measure out controlled substances for future purchase. Consequently, I believe that the empty kilogram-sized vacuum seal bag previously contained a quantity of controlled substances that TORBERT subsequently distributed. Analysis from the Hamilton County Crime Laboratory revealed that the residue from

4

the kilogram-wrapper was positive for the presence of heroin, fentanyl and tramadol and that the other white substance seized was positive for the presence of cocaine.

12. In the common area in the basement, officers/agents located a locked closet labelled with the number "1" on it. A key from the key chain previously seized from TORBERT opened that closet. Inside the closet, officers/agents located two presses with suspected heroin/fentanyl residue and three firearms, two of which were loaded, to include a Glock pistol. Based on my training and experience, I am aware that drug traffickers often use presses to shape controlled substances into a brick form for later distribution. I spoke with the resident of 2504 Kipling Avenue, apartment 1, who told me that the closet marked with "1" on it was not his assigned storage closet. The resident showed me the location of his unit's assigned closet, which was located in a different area of the basement.

13. Also located in the common area in the basement was a stove unit. Officers/agents moved the stove and located approximately 977 grams of a white powder. Analysis from the Hamilton County Crime Laboratory revealed that the powder found consisted of approximately 977 grams of a combination of valeryl fentanyl, fentanyl and tramadol. Based on my training, experience, discussions with other law enforcement officers/agents, my knowledge that TORBERT possessed keys to 2504 Kipling Avenue, Apartment 2, where officers/agents located an empty, kilogram-sized bag containing heroin/fentanyl and tramadol residue, drug preparation and packaging material, and a small bag containing cocaine, my knowledge that TORBERT also possessed keys to a closet in the common area in the basement of 2504 Kipling Avenue where officers/agents located presses with suspected heroin/fentanyl residue and three firearms, and my knowledge that officers/agents located approximately 977 grams of fentanyl mixture in the common area in the basement in close proximity to the storage closet, I believe that TORBERT

5

possessed the 977 grams of fentanyl mixture. I further believe that TORBERT intended to distribute these controlled substances.

14. On March 15, 2019, the Honorable Stephanie K. Bowman, United States Magistrate Judge, signed a search warrant authorizing the search of 1933 Chaucer Drive, Apartment D, Cincinnati, Ohio. Later that day, officers executed the search warrant and located approximately 20 mobile phones, which are believed to have been previously used by TORBERT in furtherance of his drug-trafficking activities.

15. On March 20, 2019, United States Magistrate Judge Stephanie K. Bowman signed court orders authorizing the searches of the mobile phones seized from TORBERT.

16. While reviewing the contents of the telephone assigned call number 513-499-7067, agents observed WhatsApp communications between TORBERT, using call number 513-499-7067 and an unknown person using 52-1-3112564601 (UP4601) on December 21, 2018. Following is an excerpt of the communications:

| TORBERT | I need to come to the hills to find me a chemist |
| TORBERT | Find us some one who can make us synthetic I will pay production costs |
| UP4601 | I let u know whats up |

17. Based on my training, experience, my belief that TORBERT possessed approximately 977 grams of fentanyl mixture, and my knowledge that fentanyl is a synthetic opioid, I believe that TORBERT was telling UP4601 that TORBERT wanted UP4601 to find someone that could make fentanyl.

18. On March 27, 2019, TORBERT was indicted by a Grand Jury in the Southern District of Ohio and was charged with several offenses to include possession with intent to distribute more than 400 grams of fentanyl.

19. On May 10, 2019, I reviewed call records for **513-418-7956** (the **SUBJECT TELEPHONE**.) According to call records, the **SUBJECT TELEPHONE** communicated with TORBERT's telephone 513-331-1962 approximately 15 times between January 25, 2019 and March 28, 2019. The **SUBJECT TELEPHONE** also communicated with 52-3112564601 at least 34 times between January 9, 2019 and May 8, 2019.

20. Based on my knowledge that officers seized approximately 977 grams of fentanyl mixture from 2504 Kipling Avenue, Cincinnati, Ohio, my belief that TORBERT possessed the 977 grams of fentanyl mixture, my belief that TORBERT communicated with UP4601 about finding someone that could make fentanyl, and my knowledge that TORBERT's telephone 513-331-1962 and UP4601's telephone 52-3112564601 communicated with the **SUBJECT TELEPHONE**, I believe that the user of the **SUBJECT TELEPHONE** is using the **SUBJECT TELPHONE** in furtherance of a drug trafficking conspiracy.

21. In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several

of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

22. Based on my training and experience, I know that AT&T can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available.

23. Based on my training and experience, I know that AT&T can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

**AUTHORIZATION REQUEST**

24. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

25. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

26. I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T. I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with's services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

27. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

28. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Tyler D. field
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this 13th day of May, 2019

Honorable Stephanie K. Bowman
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number 513-418-7956 (the "Target Cell Phone"), whose wireless service provider AT&T, a wireless provider headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of AT&T, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be Disclosed by the Provider**

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control AT&T, AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

II. **Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 21 United States Code Sections 841 (a)(l), 846 involving Oscar TORBERT and other known and as-yet unknown individuals.